IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN T. WALKER, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
|     v. | : | |
| | : | |
| FRANK REGAN et al., | : | No. 13-7556 |
|     *Defendants*. | : | |

MEMORANDUM OPINION

PRATTER, J.                                                                                                                                   JUNE 8, 2015

Shawn T. Walker is incarcerated at SCI-Graterford. He brings suit against a long list of individuals associated with SCI-Graterford, including the Secretary of Corrections, the Chief Grievance Officer of the Pennsylvania Department of Corrections, as well as various Department of Corrections officials working at SCI-Graterford. Various Defendants have moved to dismiss Mr. Walker's Fourth Amended Complaint for failure to state a claim. For the reasons discussed below, the Motion to Dismiss will be granted in part and denied in part.

I. **Alleged Facts By Mr. Walker**[1]

Mr. Walker is serving a life sentence at SCI-Graterford for his conviction of first degree murder and aggravated assault in 1992. In 2012, Mr. Walker was assigned to live on B-block, known as an "Honor Block." While living in the B-block, Mr. Walker obtained his G.E.D. and then worked within the prison as a G.E.D. tutor and as a peer educator.

In December 2012, Corrections Officer Shaw violently opened the door to Mr. Walker's cell and began yelling at him profanely. The incident was captured on a security camera and witnessed by another corrections officer. Later that day, Mr. Walker called Officer Shaw over to his cell "to give her the opportunity to apologize for her behavior." Fourth Am. Compl. 6.

---

[1] The facts recounted here come from Mr. Walker's Fourth Amended Complaint and are assumed true for purposes of this analysis.

1

Officer Shaw then told Mr. Walker, profanely, to get "out of her face," at which point she double-locked Mr. Walker's cell door. *Id.* During the noon count, Officer Shaw was accompanied by another corrections officer, and the two stopped and stared into Mr. Walker's cell. When Mr. Walker did not react to Officer Shaw's stare, she ordered the accompanying corrections officer to remove the double lock from Mr. Walker's cell door.

Mr. Walker reported the incident to Pamela Sellers, a staff member at SCI-Graterford. Ms. Sellers advised Mr. Walker to file a grievance against Officer Shaw, which he then did. The grievance was assigned to Lieutenant Knapp. Lt. Knapp told Mr. Walker that he had spoken with Officer Shaw and that she denied the incident. Lt. Knapp informed Mr. Walker that he would find the grievance frivolous and unfounded unless it was withdrawn. Lt. Knapp declined to review the video footage of the incident because the video did not include audio from the incident. When Mr. Walker refused to withdraw the grievance, Lt. Knapp categorized the grievance as "frivolous and unfounded." *Id.* at 7.

When Mr. Walker left Lt. Knapp's office and returned to his cell, he found that Officer Shaw had secured her section by locking all the prisoners in their cells. Officer Shaw had also left a stack of blank grievance forms in front of Mr. Walker's cell. Mr. Walker stood silently outside the door to his cell, but Officer Shaw did not immediately open the door to allow him to enter, leaving him out on the block for some period of time. Mr. Walker took one of the blank grievance forms and reported Officer Shaw's behavior. This second grievance was not processed by Superintendent Michael Wenerowicz. Mr. Walker appealed both of his grievances to the Chief Grievance Officer, Darina Varner. Officer Varner upheld the decisions as to both grievances.

On July 13, 2013, Unit Manager Frank Regan called Mr. Walker into his office. Mr. Walker then met with Mr. Regan, Ms. Sellers, Patricia Connor-Council, and Sergeant Fina. At this meeting, Mr. Walker argued that he should retain his "Z code" status—which allowed him a single cell. In retaliation for Mr. Walker's refusal to give up his "Z-code" status and/or for Mr.

Walker's filing of two grievances against Officer Shaw, Mr. Regan falsified Mr. Walker's prison records to heighten his custody level and place an "H code" on his record, which disqualified him from certain work opportunities at the prison.

Mr. Walker was moved from B block to D block, "the worst block in the prison." Fourth Am. Compl. ¶ 87. The toilet in Mr. Walker's cell in D block "constantly had human waste backing up into [the] cell." Fourth Am. Compl. ¶ 88. Mr. Walker filed a grievance about the cell, but maintenance personnel only turned the water pressure down and did not fix the problem.

On August 4, 2013, Mr. Walker lost his job as a tutor because of his "H-code" status. Mr. Walker asked for the disadvantageous status to be removed but it was not. Mr. Walker later learned that Unit Manager Charles Hensley did not want Mr. Walker to have a job as a tutor and had sent an email expressing as much to a fellow staff member. As a result, Mr. Walker has filed multiple grievances requesting that his "H code" be removed, that he be moved back to B block, and that he be assigned another job. Each grievance and appeal was denied.

In November 2013, Mr. Walker's "H code" was removed. However, Messrs. Regan and Hensley refused to move Mr. Walker back to B block. It was not until 5 weeks later that Mr. Walker was moved back to B block. However, he was not rehired as a tutor, and instead was hired as a block janitor with fewer hours than he had before. This entire situation caused Mr. Walker much stress.

Mr. Walker commenced this suit in December 2013. Mr. Regan was served with the summons and complaint on June 10, 2014. On June 27, 2014, Mr. Regan, without explanation, had Mr. Walker moved to a more restrictive and isolated housing unit called "Upper H." Mr. Regan came to Mr. Walker's cell in "Upper H" and screamed "are you going to move?" three times at Mr. Walker. Fourth Am. Compl. ¶116. Mr. Walker was then taken to the "hole" and given a fabricated misconduct report written by Mr. Regan. Mr. Walker began a hunger strike that day that ended, 12 days later, on July 9, 2014.

On July 1, 2014, Mr. Walker participated in a formal hearing conducted by Hearing Examiner Mary Canino, after which he was found guilty of all charges and sentenced to 90 days in the "hole." Mr. Walker also lost his janitorial job. Mr. Walker appealed the decision without the benefit of the Disciplinary Hearing Report, which had not been provided to him despite his requests. His appeal was denied by Defendants Thomas Dohman, William Mitchew, and Derek White. Mr. Walker appealed again to Superintendent Wenerowicz, who modified the punishment from 90 days to 60 days. Mr. Walker again appealed, but Chief Hearing Examiner Robin M. Lewis denied the appeal.

Mr. Walker was moved from the "hole" back to D block on July 17, 2014. After Mr. Walker retrieved his property that he had not been permitted to bring with him to the "hole," he found that his Yamaha keyboard had been badly damaged. Mr. Walker spoke with Officer Medina who stated that the keyboard was in excellent condition when Mr. Walker was put in the "hole." Mr. Walker filed a grievance about the damage to his keyboard, which was denied by Lieutenant Derek White. Mr. Walker appealed the denial, but this appeal was denied by Deputy Superintendent George Ondrejka. Mr. Walker again appealed, but that appeal was likewise denied by Chief Grievance Officer Keri Moore.

## II.     Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). But the Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted). To survive a motion to dismiss

the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

Given the nature and complexity of Mr. Walker's claims, these standards must be applied as to each of the defendants and each of the substantive claims.

**III.  Analysis**

*a. Interaction with Corrections Officer Shaw*

Mr. Walker's first set of allegations concern Corrections Officer Shaw's harsh words and gestures (such as slamming the cell door). Such words and gestures, however, do not amount to a violation of Mr. Walker's civil rights. *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Aleem-X v. Westcott*, 347 F. App'x 731, 731 (3d Cir. 2009) ("Verbal abuse of a prisoner, even of the lewd variety alleged here, is not actionable under § 1983."); *Cummings v. Smith*, No. 09-0335, 2011 WL 238659, at *1 (E.D. Pa. Jan. 20, 2011) ("Verbal harassment, even coupled with threatening language and gestures, cannot support a § 1983 claim under the circumstances alleged here.").

5

Likewise Corrections Officer Shaw's alleged actions following Mr. Walker's filing of a grievance do not support a claim for retaliation. Officer Shaw's actions would have had to "deter a person of ordinary firmness" from exercising his constitutional rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Here, Mr. Walker alleges that Officer Shaw left him standing out on the block outside of his cell for an unspecified, but presumably brief,[2] period of time. Mr. Walker does not allege that this action caused him any harm, sense of jeopardy, or even discomfort. Such an action, without more, would not deter a prisoner of ordinary firmness from exercising his constitutional rights. *Cf. Verbanik v. Harlow*, 512 F. App'x 120, 123 (3d Cir. 2013) ("[B]eing left in the shower on one occasion for at most 105 minutes over the required 15 minutes shower-time does not, without more, constitute an adverse action sufficient to deter a person of ordinary firmness from exercising their constitutional rights.").

Accordingly, this portion of Mr. Walker's Fourth Amended Complaint is dismissed with prejudice.

b. *Restricted Housing, Change of Custody Level, Loss of Employment, Change of Block*

Mr. Walker also alleges that he was placed in restricted housing (the "hole") for about 20 days based upon a fabricated misconduct report. While the Court concludes that this action was sufficiently adverse to support Mr. Walker's retaliation claim (*see* Part III.e), Mr. Walker does not have a claim under the Eighth Amendment or the Due Process Clause for his time assigned to restricted housing. To state a claim for a violation of the Eighth Amendment, Mr. Walker must allege "that he has been deprived of the minimal civilized measure of life's necessities. This includes proving that the deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). To state a claim for a violation of the Due Process Clause, Mr.

---

[2] Mr. Walker alleges that Officer Shaw left him out on the block "until she come [*sic*] around for 12 p.m. count." Fourth Am. Compl. ¶ 62.

Walker must allege that the "restraints at issue exceed the prisoner's sentence 'in such an unexpected manner as to give rise to protection by the Due Process Clause of [their] own force' and do not violate any other constitutional provision." *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Because disciplinary detention and administrative segregation are the sorts of confinement that inmates should reasonably anticipate receiving at some point in their incarceration . . . transfer to less amenable and more restrictive quarters [does] not implicate a liberty interest protected by the Due Process Clause." *Id.* (quotation marks and alterations removed).

Here, there are no allegations that Mr. Walker was denied any of life's necessities during his time in restricted housing[3] or that his 20 days in restricted housing were atypical of the disciplinary housing that a prisoner would reasonably anticipate receiving at some point during his incarceration. *Cf. Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (112 days in restricted housing does not implicate Eigth Amendment or Due Process Clause); *Torres*, 292 F.3d at 151 (15 days in disciplinary detention and 120 days in administrative segregation did not implicate a protected liberty interest); *Griffin*, 112 F.3d at 709 (15 months in administrative segregation does not implicate Due Process Clause or Eighth Amendment); *Gibson v. Lynch*, 652 F.2d 348, 351 (3d Cir. 1981) (90 days in solitary confinement due to prison overcrowding did not violate Eighth Amendment).

Similarly, Mr. Walker's claims related to his custody level, "H-code", loss of employment, and block assignment (in and of themselves—*see* Part III.c for a discussion of the sanitary conditions of Mr. Walker's cell in D-block) are not cognizable under the Eighth Amendment or Due Process Clause. *See, e.g.*, *Padilla v. Beard*, 206 F. App'x 123, 125 (3d Cir. 2006), *as amended* (Jan. 25, 2007) ("Restriction from employment and prison programs are

---

[3] Mr. Walker alleges that he went on a hunger strike while in restricted housing, but does not allege any facts from which the Court could conclude that the hunger strike was involuntary or that any prison officials were deliberately indifferent to Mr. Walker's necessities during that period.

among the conditions of confinement that Padilla should reasonably anticipate during his incarceration; thus, application of the H-Code policy does not implicate a liberty interest protected by the Due Process Clause."); *Mimms v. U.N.I.C.O.R.*, No. 09-1284, 2010 WL 415318, at *4 (D.N.J. Jan. 29, 2010) *aff'd*, 386 F. App'x 32 (3d Cir. 2010) ("Plaintiff's employment-related allegations do not state a claim: prisoners have no protected liberty or property interest in retaining prison employment (or, moreover, in prison employment promotion)."). Accordingly, these claims must be dismissed.

Mr. Walker also brings claims against the prison officials who reviewed these actions taken against him.[4] Mr. Walker's claims against these officials must also be dismissed, as there is no underlying constitutional violation with respect to his time in disciplinary housing or his change in custody level, employment status, and cell block. *See Burns v. PA Dep't of Corr.*, 642 F.3d 163, 170-71 (3d Cir. 2011) ("However, inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest.").

Accordingly, these portions of Mr. Walker's Fourth Amended Complaint are also dismissed with prejudice.

c. *Human Waste Backing Into Mr. Walker's Cell*

In paragraphs 88 and 89 of his Fourth Amended Complaint, Mr. Walker alleges:

88. Plaintiff was put in a cell that constantly had human waste backing up into my cell.

---

[4] Although some defendants have not been served and, accordingly, have not joined the Motion to Dismiss, the Court will nevertheless consider dismissal pursuant its statutory obligation under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, which requires the Court to dismiss the portions of a prisoner's complaint against a government entity, officer, or employee, that fail to state a claim. This provision of the PLRA applies even when a prisoner has paid the required filing fee. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998); *Muchler v. Smith Bail Bonds, LLC*, No. 3:15-CV-0093, 2015 WL 2454050, at *4 (M.D. Pa. May 22, 2015); *Lane v. Fed. Bureau of Prisons*, No. 3:15-CV-660, 2015 WL 2213635, at *5 (M.D. Pa. May 11, 2015).

8

> 89. Plaintiff filed a grievance regarding the waste backing up into my cell. Maintenance couldn't or wouldn't fix the problem. All they did was turn the water pressure down.

Fourth Am. Compl. ¶¶ 88-89. Defendants seek dismissal of these allegations, arguing that Mr. Walker's allegations "do[] not show the involvement of any defendant, let alone the deliberate indifference requisite for an Eighth Amendment claim." Mot. to Dismiss 13 n.2. The Court agrees and finds that Mr. Walker's allegations, as written, are not sufficient to state a claim as presently written. However, the Court will allow Mr. Walker an opportunity to further amend his complaint and reassert this claim.

To state a claim for an Eighth Amendment violation, Mr. Walker must allege "that he has been deprived of the minimal civilized measure of life's necessities. This includes proving that the deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin*, 112 F.3d at 709. The named defendants must have known that an inamte "face[d] a substantial risk of serious harm and" and must have "disregarde[d] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

"Unsanitary conditions can be cruel and unusual," *Allah v. Bartkowski*, 574 F. App'x 135, 138 (3d Cir. 2014), and, when read in the light most favorable to Mr. Walker, paragraph 88 of the Fourth Amended Complaint alleges a seriously unsanitary condition. Paragraph 89 of Mr. Walker's Fourth Amended Complaint alleges that prison officials were aware of the unsanitary conditions and failed to take any measure beyond turning down the water pressure, failing to remedy the unsanitary condition of the cell. Defendants may ultimately prove correct that the situation was timely and properly remedied and that the delay in the repair of the cell was "attributed to Mr. Walker's reporting the wrong cell number." Mot. to Dismiss 13 n.2 (Doc. No. 60). At this stage of the litigation, the Court must accept as true Mr. Walker's assertions. If, in

9

fact, human waste was constantly "backing into" Mr. Walker's cell, resulting in a serious deprivation of basic human sanitary conditions, and prison officials knew about but did not take reasonable steps to remedy the situation, Mr. Walker might well have a claim under the Eighth Amendment. *Cf. Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (holding that the Court must consider the totality of the circumstances and that "[r]elevant considerations include . . . the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers"). Indeed, it may well be that even if Mr. Walker reported the wrong cell number, such an error is meaningless in the face of the reality of a sewage back-up in the close quarters of a prison.

Mr. Walker's claim cannot proceed in its current state, however, because it does not allege what role, if any, the named defendants had in the unsanitary conditions of his cell. Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *See Gould v. Wetzel*, 547 F. App'x 129, 132 (3d Cir. 2013) (citing *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 76 (3d Cir. 2011)). Mr. Walker's Fourth Amended Complaint does not provide any allegation that any of the named defendants were aware of the unsanitary conditions of his cell and then knowingly and unreasonably failed to remedy such conditions. Accordingly, Defendants' Motion to Dismiss Mr. Walker's § 1983 claims under the Eighth Amendment for the unsanitary conditions of his cell will be granted. However, the Court will allow Mr. Walker to amend his complaint to allege what role, if any, the various named defendants had with respect to this claim.

   d. *Damaged Keyboard*

Mr. Walker brings a claim against the officials who denied his grievance regarding his damaged keyboard. The damage to Mr. Walker's property interest is not actionable under the Due Process Clause if a "meaningful postdeprivation remedy for the loss is available." *Monroe v.*

10

*Beard*, 536 F.3d 198, 210 (3d Cir. 2008). Here, Mr. Walker alleges that he filed a grievance for the damaged keyboard. *See* Fourth Am. Compl. ¶ 149. That grievance was denied, appealed, denied again, appealed again, and denied a third and final time. *Id.* ¶¶ 150-53. Mr. Walker has not alleged that this grievance procedure was not meaningful in the constitutional sense, other than to claim that the initial reviewing official did not inspect the keyboard or speak with him. *Id.* ¶ 150. However, Mr. Walker was able to appeal the initial denial of his grievance twice. The Court finds that Mr. Walker cannot state a claim under the Due Process Clause for the handling of his claim of damage to his keyboard and will dismiss this claim with prejudice.

e. *Retaliation by Unit Manager Regan*

Mr. Walker's claims for retaliation against Unit Manager Regan will survive the Motion to Dismiss.

Mr. Walker alleges that in the summer of 2013, in retaliation for Mr. Walker's grievances against Officer Shaw and/or for Mr. Walker's voiced opposition to giving up his "Z code" status, Mr. Regan increased Mr. Walker's custody level and put an "H code" on his status, resulting in a loss of Mr. Walker's prison job.[5] Mr. Walker also alleges that in July 2014, in opposition to Mr. Walker's filing of this action, Mr. Regan again moved Mr. Walker to a more restricted block in the prison and then filed a false misconduct report against Mr. Walker, resulting in Mr. Walker being placed in the "hole." Even though Mr. Regan's alleged actions against Mr. Walker do not violate the Eighth Amendment or Due Process Clause, Mr. Walker may nonetheless bring a claim for retaliation. *See Allah*, 229 F.3d at 224 ("Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. ").

---

[5] Specifically, the transfer was to D-block, where Mr. Walker was "put in a cell that constantly had human waste backing up into [the cell]." ¶ 87.

To state a claim for retaliation under the First Amendment, Mr. Walker needs to allege (a) "the conduct which led to the alleged retaliation was constitutionally protected;" (b) he "suffered some adverse action at the hands of the prison officials;" and (c) there is a "causal link between the exercise of his constitutional rights and the adverse action taken against him," such that "the constitutionally protected conduct was a substantial or motivating factor" in the adverse action taken against him. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quotation marks omitted). Mr. Walker has sufficiently alleged those elements with respect to Mr. Regan.

Mr. Walker's filing of grievances against Officer Shaw and his filing of this civil action were constitutionally protected activities. *See Allah*, 229 F.3d at 224 ("It is well settled that prisoners have a constitutional right to access to the courts."); *Niblack v. Albino*, No. 09-428, 2009 WL 2496876, at *8 (D.N.J. Aug. 10, 2009) (citing *Milhouse v. Carlson,* 652 F.2d 371, 373–74 (3d Cir. 1981)). Taking Mr. Walker's allegations as true, the Court can also reasonably infer that Mr. Walker's alleged speech concerning his opposition to the removal of his "Z code" was constitutionally protected speech. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir. 1983) ("Nowhere do we find authority for the proposition that prison administrators have an overriding interest in the *indiscriminate* suppression of peacefully communicated inmate complaints." (emphasis in original)); c*f. Russell v. City of Philadelphia*, No. 08-5442, 2010 WL 2011593, at *4 (E.D. Pa. May 19, 2010) (holding that a prisoner's speaking out against not being paid overtime for his twelve-hour-per-day shifts in the law library was constitutionally protected speech) *aff'd on other grounds*, 428 F. App'x 174 (3d Cir. 2011).

Mr. Walker has also sufficiently alleged that Mr. Regan took adverse action against him by increasing his custody level resulting in the loss of his prison employment, moving him to the more restrictive "Upper H" block, and filing a "fabricated misconduct report" that led to Mr. Walker's time in the "hole."[6] *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment. Moreover, we believe that several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights." (citations omitted)); *Allah*, 229 F.3d at 225 (concluding that administrative segregation and associated loss of privileges met the adverse action prong).

Finally, as to causation, the Court finds that Mr. Walker has sufficiently alleged causation. There are two alleged retaliatory events. The first occurred at some point after a staff meeting attended by Mr. Regan at which Mr. Walker allegedly attempted to explain why his "Z code" should be removed. At some point after this, according to Mr. Walker, Mr. Regan "falsified Mr. Walker's prison records to raise [Mr. Walker's] custody level from 3YZ to 4YZH." Fourth Am. Compl. ¶ 80. The Court concludes that Mr. Walker sufficiently alleges a

---

[6] Mr. Regan asks the Court to analyze the move to "Upper H" in July 2014 separately. But the Court reads the Complaint as alleging a single course of adverse action in July 2014 wherein Mr. Regan, in retaliation against Mr. Walker, moved him to a more restrictive block, aggravating Mr. Walker, then filing a false misconduct report against him. Moreover, Mr. Walker alleges that he was moved to a "more restrictive and isolated housing unit," which implies that Mr. Walker was not merely moved from one block to another, but also lost some privileges because of the move. While these additional restrictions associated with "Upper H," are not alleged with any specificity, and Mr. Walker may want to consider adding additional details should he amend his complaint, the Court finds that overall course of conduct, including not only the move to "Upper H" but also the additional restrictions associated with "Upper H" and the fabricated misconduct report, could be found by a factfinder to deter a person of "ordinary firmness from exercising his First Amendment Rights." *See Allah*, 229 F.3d at 225; c*f. Keeling v. Barrager*, No. 4:CV-11-0365, 2014 WL 1338077, at *10 (M.D. Pa. Apr. 3, 2014) (dismissing retaliation claim because "Plaintiff does not allege any facts from which it can be inferred that life on J–Block is any different from or less agreeable than life on A–Block.").

causal link between his voiced opposition to the removal of the "Z code" and his increase in custody level. The Fourth Amended Complaint is not clear on the exact timing, but it does give rise to an inference that the increased custody level was temporally proximate to Mr. Walker's opposition in the staffing meeting. Moreover, Mr. Regan is alleged to have on multiple occasions taken antagonistic action against Mr. Walker without justification. These alleged antagonistic actions include removing Mr. Walker's "Z code," moving Mr. Walker to D block, unjustifiably increasing Mr. Walker's custody level, unjustifiably adding an "H code" to Mr. Walker's status, refusing to move Mr. Walker off D block, moving Mr. Walker to "Upper H," yelling at Mr. Walker without provocation, and fabricating a misconduct report that resulted in Mr. Walker being sent to the "hole." This alleged pattern of antagonism, coupled with the temporal connection between the alleged constitutionally protected conduct and the adverse action, prompts the Court to find plausible, at this preliminary stage, the allegation that the constitutionally protected activity substantially motivated the adverse action.[7] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.").

The second retaliatory action occurred 17 days after Mr. Regan was served with the Complaint in this lawsuit. Although the temporal proximity alone is perhaps not "unusually suggestive," the alleged "pattern of antagonism coupled with timing" states a plausible causal

---

[7] The Court does not find plausible Mr. Walker's allegation that the increase in his custody level was retaliation for filing grievances against Officer Shaw some six months before the alleged adverse actions. That timing is too remote, and there is nothing in the Complaint to suggest Mr. Regan was even aware of the earlier grievances against Officer Shaw. However, Mr. Walker's retaliation claim will be permitted to proceed on the theory that Mr. Regan was retaliating against Mr. Walker for his opposition to the removal of the "Z code" from his status.

link between the constitutionally protected conduct (the filing of the Complaint) and the adverse actions (the move to a more restrictive block and the filing of the false misconduct report). *See Lauren W. ex rel. Jean W.*, 480 F.3d at 267. While 17 days had passed since Mr. Regan was served with the Complaint, a significant event in the course of the litigation—Mr. Regan's filing of a motion to dismiss—had occurred the day before the alleged retaliatory conduct. Moreover, Mr. Regan allegedly refused to provide Mr. Walker with any explanation for the cell block move, despite being asked, and then allegedly began to yell at Mr. Walker, unprovoked. These circumstances, along with the timing and the alleged pattern of antagonism against Mr. Walker by Mr. Regan, make Mr. Walker's allegations of causation plausible. Mr. Walker may well be unable to ultimately prove a causal connection between the constitutionally protected activity and the alleged adverse action, but, at this preliminary stage, the Court concludes that Mr. Walker has sufficiently alleged a causal link. *Cf. Mitchell*, 318 F.3d at 530 ("Finally, we agree with Mitchell that the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him.").

For these reasons, Mr. Walker's claims against Mr. Regan for retaliation will survive the Motion to Dismiss.[8] To the extent Mr. Walker is seeking to bring retaliation claims against defendants other than Mr. Regan (such as others attending the staffing meeting at which Mr. Walker protested the removal of his "Z code") those claims will be dismissed, as the Fourth

---

[8] Mr. Regan is not entitled, at this preliminary stage, to the protection of qualified immunity. A court must conduct a two-part inquiry to determine if a state official is entitled to qualified immunity: the court must determine whether the officer's conduct violated a constitutional right and whether the constitutional right was clearly established such that "a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001). If Mr. Walker's allegations are taken as true, then Mr. Walker's constitutional rights were violated. Moreover, "a reasonable prison official would know that he violates [a prisoner's right to access the courts] if he retaliates against a prisoner for filing a lawsuit." *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003). The Court cannot conclude, therefore, at the pleading stage, whether Mr. Regan's actions are entitled to qualified immunity.

Amended Complaint does not allege that other defendants took adverse action against Mr. Walker or that any such actions were motivated by Mr. Walker's alleged constitutionally protected activities.

### f. *Mandamus*

Mr. Walker's request for mandamus is denied. The Court has no authority to issue writs of mandamus compelling state officials to take action. *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963).

### g. *Compensatory Damages*

Mr. Walker is not entitled to compensatory damages for any mental or emotional injury as he has not alleged any physical injury in his Fourth Amended Complaint or his prior Complaints. 42 U.S.C.A. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .").

## IV. Conclusion

For the reasons discussed above, the Court will dismiss with prejudice all of Mr. Walker's claims except (a) his claim that the unsanitary conditions of his cell violated the Eighth Amendment, which is dismissed without prejudice; and (b) his claims of retaliation against Mr. Regan, which are not dismissed. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge