# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN T. WALKER, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 13-7556 |
| FRANK REGAN et al., | : | |
|     *Defendants*. | : | |

## M E M O R A N D U M

PRATTER, J.                                                                                                                                                                               FEBRUARY 14, 2019

       Shawn T. Walker is incarcerated at SCI-Graterford, which is operated by the Pennsylvania Department of Corrections. Mr. Walker has, over the past five years, brought several claims against various DOC officials, but only two claims—each alleging first amendment retaliation by retired Unit Manager Frank Regan—remain. The discovery issues presented here all stem from Mr. Walker's first claim, which is premised on his assertion that he was placed on "H-Code"—or high risk—status by Mr. Regan, as retaliation for filing two grievances about a prison official and refusing to voluntarily cede his single-occupancy cell.

       In pursuit of his retaliation claim, Mr. Walker directed the two at-issue discovery requests towards non-party Secretary of Corrections John Wetzel. First, Mr. Walker requested DOC's H-Code policy. Second, Mr. Walker attempted to subpoena two "vote sheets," which relate to decisions made by DOC officials after Mr. Walker was placed on H-Code status. For the reasons identified below, Mr. Walker is not entitled to production of any of the documents requested.

### BACKGROUND

       Mr. Walker is serving a life sentence at SCI-Graterford. Mr. Walker has filed at least two grievances against prison officials while incarcerated. According to Mr. Walker, in July 2013,

after he filed those grievances, Unit Manager Frank Regan held a meeting with Mr. Walker and several other prison officials to discuss whether Mr. Walker should retain his "Z-Code" status—which allowed him a single cell. Mr. Walker argues that, in retaliation for the previously filed grievances and refusing to voluntarily give up his Z-Code status, Mr. Regan (and the other prison officials at the meeting) designated Mr. Walker with H-Code status. H-Code status indicates that a prisoner is high-risk, and it disqualifies the prisoner from certain privileges.

After Mr. Walker was assigned an H-Code designation, he was subject to multiple "staffings," during which prison officials met to vote on decisions relating to Mr. Walker. Votes are recorded on "vote sheets," which also identify criteria for custody levels and allow prison officials to opine about the status of inmates. During one staffing, on or around July 26, 2013, prison officials voted to remove Mr. Walker from his job as a tutor. During another staffing, on or around October 30, 2013, prison officials voted to remove Mr. Walker's H-Code designation. Mr. Regan was not involved in either staffing after the decision to assign Mr. Walker H-Code status.

## PROCEDURAL HISTORY

There are two separate discovery issues here: (1) Mr. Walker's request for DOC's H-Code policy and (2) his request for vote sheets from the two post-H-Code staffings.

### Mr. Walker's Attempts to Obtain DOC's H-Code Policy

On May 14, 2018, shortly before Mr. Regan filed his outstanding Motion for Summary Judgment, Mr. Walker moved the Court to compel Mr. Regan to produce DOC's H-Code policy. Doc. No. 93. Mr. Regan opposed the Motion to Compel, arguing that because he was retired and no longer had access to the policy, he could not produce the document. Doc. No. 95. The Court agreed that it could not "compel [Mr. Regan] to produce that which he does not have," and so it denied Mr. Walker's Motion to Compel on September 4, 2018. Doc. No. 103.

2

Shortly thereafter, on September 11, 2018, Mr. Walker sought to compel the H-Code policy from non-party DOC Secretary Wetzel instead. Doc. No. 106. The Court denied Mr. Walker's Motion to Compel because, although Secretary Wetzel appeared to be the correct party from whom to seek discovery of the H-Code policy, Mr. Walker had not previously submitted discovery requests, or otherwise provided notice, to Secretary Wetzel. Doc. No. 109. In a footnote, the Court "urge[d] counsel for [Mr. Regan] to confer with [Secretary] Wetzel as to whether [Secretary] Wetzel will allow counsel for [Mr. Regan] to accept, on [Secretary] Wetzel's behalf, service of any discovery requests," because "counsel for [Mr. Regan] formerly represented [Secretary] Wetzel in this action." Id.

On November 15, 2018, Mr. Walker filed a "Notice to the Court," which included as an attachment a copy of a letter from Mr. Regan's counsel to Mr. Walker. Doc. No. 120. The letter responded to Mr. Walker's request for DOC's H-Code policy, noted the Court's suggestion that counsel confer with Mr. Walker, referred Mr. Walker to Mr. Regan's discovery responses and a declaration filed in support of his Motion for Summary Judgment, and attached portions of the H-Code policy, in heavily redacted form. Id.

Mr. Walker argued in his Notice that the H-Code policy was "so redacted it [wa]s useless to [him]." Id. In response, and upon reviewing the redacted H-Code policy, the Court ordered Secretary Wetzel to either (1) produce the H-Code policy to Mr. Walker, or (2) move for a protective order and attach a copy of the H-Code policy for *in camera* review. Doc. No. 122. Secretary Wetzel chose the second option and moved for a protective order. Doc. Nos. 123, 124. Mr. Walker opposed the Motion for Protective Order. Doc. No. 127.

**Mr. Walker's Requests for Certain Vote Sheets**

Separately, on January 9, 2019, Mr. Walker moved to compel discovery and enforce a subpoena against Secretary Wetzel. Doc. No. 126. Mr. Walker sought two vote sheets, each from decisions made by DOC personnel after Mr. Walker was designated with H-Code status. Mr. Walker sought (1) the vote sheet from the decision to remove Mr. Walker from his job as a tutor, and (2) the vote sheet from the decision to remove Mr. Walker's H-Code designation. Id. Secretary Wetzel moved to quash the subpoena and opposed Mr. Walker's Motion to Compel. Doc. No. 128.

## DISCUSSION

For both sets of discovery requests, Secretary Wetzel makes two arguments as to why the Court should not order production. First, Secretary Wetzel argues that the documents are protected by the deliberative process privilege. Second, Secretary Wetzel argues that the documents are privileged because they represent a security risk. The Court addresses each privilege argument in turn.

### I. The Deliberative Process Privilege Does Not Protect the H-Code Policy but Does Protect the Vote Sheets

"The deliberative process privilege permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853 (3d Cir. 1995) (quotation and citation omitted). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975). "The material to be protected must reflect the 'give and take' of the consultative process, the personal opinions of the agency members in the course of policy formulation rather than the policy of the agency itself." Resident Advisory Bd. v. Rizzo,

97 F.R.D. 749, 753 (E.D. Pa. 1983) (quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir.1980)); accord Griffin-El v. Beard, No. CIV.A. 06-2719, 2009 WL 1606891, at *5 (E.D. Pa. June 8, 2009) (Restrepo, J.) (stating same).

Once the government or a government official has made a *prima facie* showing that the privilege applies, the Court conducts a balancing analysis. It must "balance the competing interests of the parties," and "[t]he party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." Redland Soccer Club, 55 F.3d at 854.

### A. The H-Code Policy Is Not Protected by the Deliberative Process Privilege

Secretary Wetzel incorrectly argues that the H-Code policy is protected by the deliberative process privilege. According to Secretary Wetzel, the H-Code policy is both "pre-decisional" and "deliberative." Reid v. Cumberland Cty., 34 F. Supp. 3d 396, 406 (D.N.J. 2013). Although the creation of the H-Code policy necessarily preceded any decision made enforcing the policy, the policy itself is not deliberative. As this Court stated in Rizzo and reaffirmed in Griffin-El, "the material to be protected must reflect . . . the personal opinions of the agency members in the course of policy formulation rather than the policy of the agency itself." Rizzo, 97 F.R.D. at 753 (emphasis added); see also Griffin-El, 2009 WL 1606891, at *5 (stating same). Although decisions to enforce the H-Code policy may be protected by the deliberative process privilege, the privilege does not protect the policy itself. The Court cannot grant Secretary Wetzel's Motion for Protective Order on this basis.

5

### B. The Vote Sheets Are Protected by the Deliberative Process Privilege

The requested vote sheets, unlike the H-Code policy, are quintessential examples of documents protected by the deliberative process privilege.[1] Each vote sheet reflects the decision-making process of DOC officials; they memorialize "confidential deliberations" aimed at deciding whether a prisoner should or should not be subject to restrictions or entitled to privileges. Redland Soccer Club, 55 F.3d at 853. And although the deliberative process privilege "does not protect factual information," the vote sheets do not reflect fact-finding. They are deliberative, providing "counselors opportunities to be candid and express their views about changes to an inmate's custody level and classification." Doc. No. 128-1 ¶ 9 (Decl. of Secretary Wetzel). As a result, the vote sheets are well within the scope of the privilege.

Mr. Walker has not carried his burden of establishing a need for the vote sheets. Indeed, according to Secretary Wetzel, the only remaining defendant in this action—Mr. Regan—did not participate in either of the votes recorded by the at-issue vote sheets. See id. It is therefore unclear what relevance (if any) the vote sheets have to Mr. Walker's claims against Mr. Regan. Even

---

[1] Secretary Wetzel acknowledges that the redacted version of another vote-sheet—the vote sheet for the decision to actually assign Mr. Walker H-Code status—was produced in this litigation. "[W]hen one party intentionally discloses privileged material with the aim, in whole or in part, of furthering that party's case, the party waives its attorney-client privilege with respect to the subject-matter of the disclosed communications." Murray v. Gemplus Int'l, S.A., 217 F.R.D. 362, 367 (E.D. Pa. 2003). But here, DOC previously disclosed the H-Code vote-sheet because it was "at the heart of [Mr. Walker's] case," not to further DOC's own case. Doc. No. 128-1 ¶ 11 (Decl. of Secretary Wetzel). DOC, therefore, is not invoking its deliberative process privilege as a sword and shield.

Moreover, the one disclosed vote sheet, the vote sheet related to the assignment of H-Code status to Mr. Walker, has a different subject-matter from the vote sheets at issue in this discovery dispute. The at-issue vote-sheets concern two DOC decisions other than assignment of H-Code status. See Doc. No. 128-1 ¶ 7 (Decl. of Secretary Wetzel) ("The first vote sheet at issue refers to a staffing date of July 26, 2013, and the superintendent's decision of August 2, 2013, removing Mr. Walker's tutor job. . . . The second vote sheet at issue relates to the removal of Mr. Walker's H Code.") (emphasis added). As such, subject-matter waiver doctrine does not apply.

assuming the vote sheets are tangentially relevant, Mr. Walker's need is outweighed by DOC's interest in maintaining the confidentiality of the vote sheets.[2] The Court will consequently deny Mr. Walker's Motion to Compel production of the vote sheets and grant Secretary Wetzel's Motion to Quash.

## II. Disclosure of the H-Code Policy Would Create a Security Risk and the Policy Is Therefore Privileged

Although the H-Code policy is not protected by the deliberative process privilege, that does not end the Court's inquiry. Numerous district courts in this circuit have held that "[w]hen discoverable information raises institutional and security concerns, the court must balance the need for the information and the extent the information compromises security." McAllister v. Weikel, No. 12-2273, 2015 WL 3953048, at *2 (M.D. Pa. June 29, 2015); accord Morris v. Bakos, No. 14-201, 2016 WL 6476998, at *2 (W.D. Pa. Nov. 1, 2016) ("Turning over information regarding the internal workings of prison security to an inmate may pose a danger to correction officers and other inmates. Other courts have reached similar conclusions. . . . [S]ecurity concerns coupled with [a] lack of relevance warrant exclusion of [certain] policies as evidence at trial.") (citation

---

[2] According to Secretary Wetzel:

"Vote sheets are highly confidential documents that identify various criteria considered in assigning custody levels and various codes such as the H code. Staffings/vote sheets provide counselors opportunities to be candid and express their views about changes to an inmate's custody level and classification. Giving that information to inmates can place counselors in danger and inhibit their future decisions during staffings. Production of the vote sheets also provides inmates with opportunities to manipulate the results, such that an inmate could--through intimidation or other means--manipulate a counselor or other staffing participant to recommend a lower custody level than would be appropriate for the inmate. That would affect prison security."

Doc. No. 128-1 ¶ 9 (Decl. of Secretary Wetzel).

7

omitted).³ If the security concerns outweigh the need for the information, production is inappropriate. See id.

Here, the Court has conducted an *in camera* review of the H-Code policy and the other portions of the DOC Manual referring to the policy. Further, it has reviewed the descriptions of the H-Code policy that Mr. Regan already provided to Mr. Walker, via (1) Mr. Regan's Responses to Mr. Walker's Requests for Admission, see MSJ Ex. D3, and (2) Mr. Regan's Declaration. See MSJ Ex. D7. Based on that review, the Court determines that two factors support granting Secretary Wetzel's Motion for a Protective Order.

First, based upon the materials produced to Mr. Walker by Mr. Regan during discovery, Mr. Walker already has some information about the H-Code policy. For example, Mr. Regan's discovery responses show that H-Code status "indicates high risk" and that inmates with that status may "have a high potential for repeating a demonstrated assaultive behavior with the intent to cause death or serious bodily injury." MSJ Ex. D3; see also MSJ Ex. D7. Because Mr. Walker

---

³ See also Houser v. Pennsylvania Dep't of Corr., No. 13-1068, 2015 WL 757552, at *4 (W.D. Pa. Feb. 23, 2015) (denying request for DOC documents because "[a]llowing Plaintiff access to such information would create a substantial security risk"); Mearin v. Folino, No. 11-571, 2012 WL 4378184, at *6 (W.D. Pa. Sept. 24, 2012) (denying request for policy, the production of which would "'potentially enable inmates to frustrate the Department's drug enforcement and interdiction efforts," and would pose a significant risk to the security of the institution and safety of the staff and inmates"); Paluch v. Dawson, No. 06-01751, 2007 WL 4375937, at *5 (M.D. Pa. Dec. 12, 2007) ("The court concludes that Defendants' concerns are valid and that the procedure manuals to the relevant DOC policies must be kept confidential in the interests of prison safety and security.").

Although the Third Circuit Court of Appeals does not appear to have had cause to scrutinize the propriety of inmates' discovery requests that implicate prison security, the courts of appeals in other circuits have affirmed district courts' decisions not to allow discovery that threatened prison safety. See, e.g., Lindell v. McCaughtry, 115 F. App'x 872, 876 (7th Cir. 2004) (affirming denial of inmate's discovery request because "inmates must not be allowed to evade security restrictions by the simple expedient of filing suit and obtaining prohibited materials through discovery. Our liberal discovery policy does not mean that [a prisoner] has an absolute right to everything relevant to his case. District courts have broad discretion in discovery matters.").

knows some details about the application of the H-Code policy and who the policy affects, this mitigates his ultimate need for the actual text of the policy.

Second, the Court agrees with Secretary Wetzel that, if he provides Mr. Walker with the H-Code policy—and the more in-depth description of behaviors that may warrant H-Code status included therein, Mr. Walker could potentially (1) use this information himself "to manipulate future decisions," including those related to "preferred cell assignments, jobs, and other outcomes," or (2) "share that information with other inmates." Doc. No. 124-1 ¶¶ 8–9, 13 (Decl. of Secretary Wetzel). Because either possibility represents a "substantial security risk," this outbalances Mr. Walker's need for additional information about the H-Code policy beyond the context already provided in discovery. Houser v. Pennsylvania Dep't of Corr., No. 13-1068, 2015 WL 757552, at *4 (W.D. Pa. Feb. 23, 2015). The Court will therefore grant Secretary Wetzel's Motion for Protective Order.

## CONCLUSION

The Court is mindful of Mr. Walker's understandable desire for as much relevant information as possible to prosecute his claims. But Mr. Walker's interest in obtaining the at-issue documents is outweighed by the Department of Corrections' interest in ensuring that its internal policies and records cannot be used to compromise prison security. For those and the foregoing reasons, the Court will grant Secretary Wetzel a Protective Order whereby he need not produce the H-Code Policy, and the Court will quash Mr. Walker's subpoena requesting production of two vote sheets. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

9